1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11  FRAY MARCELINO LOPEZ                    No.  2:08-cv-01971-MCE-KJN
    RODRIGUEZ, et al.,
12
                  Plaintiffs,
13                                          **MEMORANDA AND ORDER**

14          v.

    SGLC, INC. et al.,
15
                  Defendants.
16

17

18          This action for unpaid wages, breach of contract, violation of California labor and

19  housing laws, unfair competition, and fraud proceeds on Plaintiffs' Second Amended

20  Complaint filed against, among others, Defendants SGLC, Inc., Salvador Gonzalez,

21  Julian Gonzalez, Salvador Gonzalez doing business as Salvador Gonzalez Farm Labor

22  Contractor (collectively, "SGLC Defendants" or "SGLC"), and Defendants Islands, Inc.

23  ("Islands") and Thomas Hester (collectively, "Islands Defendants").  Presently before the

24  Court is the Islands Defendants' Motion for Summary Judgment, pursuant to Federal

25  Rule of Civil Procedure 56.[1]  (ECF No. 148.)  Plaintiffs filed a timely opposition.[2]

26  _____

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise
27  noted.
[2] Also before the Court is Plaintiffs' Objection to the Untimely Filing of Defendants Islands, Inc.'s and
    Thomas Hester's Motion for Summary Judgment.  (ECF No. 183.)  The Court finds that Defendants
28  complied with the scheduling order, which required that Defendants' Motions be filed by April 12, 2012.

1

1   (ECF No. 159.)  For the reasons set forth below, the Islands Defendants' Motion

2   is GRANTED in part and DENIED in part.[3]

3   **BACKGROUND**

4

5   <u>Factual Background</u>[4]

6   Plaintiffs are Mexican farmworkers admitted to the United States pursuant to 8

7   U.S.C. § 1101(a)(15)(H)(ii)(a) and employed under temporary "H-2A" visas.  Islands and

8   the other grower Defendants depended on the labor provided by SGLC.  Islands, and

9   other growers in the Galt and Clarksburg area, experienced difficulty finding sufficient

10   labor in the 2007 growing season.  Islands, along with three other grower Defendants,

11   contracted with SGLC, Inc. for farm labor during the 2008 growing season.  Recognizing

12   the potential labor shortage that could occur again in the 2008 growing season, SGLC

13   proposed to the grower Defendants the idea of applying for an H-2A permit, and

14   recruiting temporary workers to come from Mexico under H-2A visas.

15   According to Plaintiffs, the grower Defendants including Defendant Thomas

16   Hester of Islands met with SGLC on February 20, 2008.  At that meeting, the grower

17   Defendants and SGLC discussed the H-2A application, recruitment, transportation,

18   housing, and hiring of H-2A workers.  At the meeting, there was also conversation about

19   the worker shortage and about the grower Defendants' difficulty finding an adequate

20   number of laborers to work in their fields.  Plaintiffs contend that the grower Defendants

21   and SGLC agreed that SGLC would submit an application for temporary workers from

22   Mexico.

23

24   (Amended Pretrial Scheduling Order, Jan. 14, 2011, ECF No. 127.)  Accordingly, Plaintiffs' Objection is overruled.  Defendants also moved to strike Plaintiffs' Statement of Disputed Facts on the grounds that it

25   was excessive in length, is composed of immaterial facts, and is designed to confuse the issues, mislead the Court, and annoy Defendants.  (ECF No. 202 at 1.)  Because the Court finds that the Statement of

26   Disputed Facts contains material facts and is not excessive in length, given that Plaintiffs are forty-four individuals each litigating claims, Defendants' Motion to Strike is DENIED.

27   [3] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefing.  E.D. Cal. Local Rule 230(g).

28   [4] The following recital of facts is taken, sometimes verbatim, from Plaintiffs' Statement of Undisputed Facts in Opposition to Defendants' Motion for Summary Judgment.  (ECF No. 159).

1  Islands had several conversations with SGLC about the need to bring in labor
2  from Mexico under the H-2A program.

3  SGLC submitted its original H-2A application on April 9, 2008, seeking 200
4  workers for the period of May 1, 2008, through December 31, 2008.  On April 18, 2008,
5  SGLC was notified that the application did not meet the H-2A program requirements and
6  was not accepted for processing.  The notice to SGLC stated that SGLC needed to
7  "identify if they are the owners of the work locations or if they have contracts with the
8  field location owners.  If SGLC Inc. is acting as a [field labor contractor] they must
9  provide a copy of their [field labor contractor] certificate and the contractual agreements
10 between SGLC Inc. and the field owner . . . ."

11 On April 23, 2008, SGLC submitted a modified certificate to the Department of
12 Labor ("DOL").  The modified application submitted included the "Agreement for Farm
13 Labor Contracting Services" between Islands and SGLC.  That contract states that
14 SGLC was to provide farm labor for work to be performed at various Islands locations in
15 the 2008 growing season.  The contract estimated a need for 100 workers and the total
16 amount of the contract was estimated to be $630,000.  The contract, signed on January
17 1, 2008, was the first written contract entered into between SGLC and Islands in over
18 twenty years; previously, the parties had orally contracted for labor services.  Plaintiffs
19 contend that Islands entered into the written contract with Salvador Gonzalez for the
20 purpose of supporting SGLC's H-2A application.  Thomas Hester assumed that Salvador
21 Gonzalez was going to use the contract in its application for H-2A permits.  On June 10,
22 2008, the DOL granted SGLC's certification for harvesting, pruning, general
23 maintenance, and packing pears, grapes, apples, kiwis, and cherries.  The certification
24 specifically identified Islands' Ryer Islands sites as work locations for the H-2A workers.
25 ///
26 ///
27 ///
28 ///

1    According to Plaintiffs, SGLC and the grower Defendants, including Islands, also

2  agreed to recruit H-2A workers in Mexico.  Representatives of several other grower

3  Defendants traveled with Salvador Gonzalez and Julian Gonzalez to Colima, Mexico,

4  where they met with representatives of the government of Colima to enlist their aid in

5  recruiting workers.  Islands did not send a representative to recruit workers in Mexico.

6  However, Thomas Hester was aware that the trip took place, and that trip's purpose was

7  to recruit H-2A workers.  SGLC also provided Islands with updates regarding the

8  progress of the H-2A application process, including inspections, housing, and

9  transportation.  Thomas Hester and Salvador Gonzalez discussed the need to bring in

10  workers from Mexico more than five but less than ten times.

11    Plaintiffs contend that as a result of Defendants' recruitment efforts, and the

12  approval of SGLC's H-2A applications, Plaintiffs were granted temporary visas to work in

13  the United States, exclusively under the terms of the SGLC contract.  However, after

14  Plaintiffs arrived from Mexico and began working for the other grower Defendants,

15  Thomas Hester told SGLC that he did not want the H-2A laborers working in his fields.

16  But, according to Plaintiffs, some H-2A workers did work on Islands' farms.  While in

17  California, Plaintiffs experienced a lack of work and lower wages than Plaintiffs believed

18  they would receive based on the representations Plaintiffs contend SGLC made to

19  Plaintiffs in Mexico.  Plaintiffs therefore returned to Mexico before the six-month work

20  period had ended.

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

4

1      The H-2A Program[5]

2          The H-2A program was established as part of the Immigration Reform and Control

3  Act of 1986 ("IRCA"), Pub. L. No. 99-603, 100 Stat. 3359 (codified as amended in

4  scattered sections of 8 U.S.C.).  See U.S.C. § 1188. Under the H-2A program, a

5  category of nonimmigrant foreign workers can be used for temporary agricultural

6  employment within the United States.  See id.  Agricultural employers are permitted to

7  hire nonimmigrant aliens as workers under the H-2A program if the DOL first certifies

8  that (1) there are insufficient domestic workers who are willing, able, and qualified to

9  perform the work at the time and place needed; and (2) the employment of aliens will not

10  adversely affect the wages and working conditions of domestic workers.  See id.

11  §§ 1184(c)(1), 1188(a)(1).

12          The conditions under which an H-2A worker may be allowed into the United

13  States for temporary agricultural employment are prescribed by the H-2A regulations.

14  The H-2A regulations include provisions related to housing, meals, work-related

15  equipment, and transportation.  For example, an employer seeking the services of H-2A

16  workers must compensate them at a rate not less than the federal minimum wage, the

17  prevailing wage rate in the area, or the "adverse effect wage rate," whichever is highest.

18  See 20 C.F.R. § 655.102(b)(9).  The "adverse effect wage rate" is the minimum wage

19  rate that the DOL determines is necessary to ensure that wages of similarly situated

20  domestic workers will not be adversely affected by the employment of H-2A workers.

21  See id. §§ 655.100(b), 655.107.  An employer must also pay an H-2A worker for inbound

22  transportation and subsistence costs, if the worker completes fifty percent of the contract

23  work period, unless the employer has previously done so.  See id. § 655.102(b)(5)(i).

24  Similarly, if the worker completes the contract work period, the employer is generally

25  responsible for the payment of outbound transportation and subsistence costs.  See id.

26  § 655.102(b)(5)(ii).

27  _____

28  [5] The following synopsis of the H-2A program is taken from Arriaga v. Fl. Pac. Farms, LLC, 305 F.3d 1228, 1232-33 (11th Cir. 2002).

**STANDARD**

Rule 56 provides for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  Celotex, 477 U.S. at 325.

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense.  See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying . . . the part of each claim or defense . . . on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter Twp. of Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment.  See Fed. R. Civ. P. 56(a), 56(c); Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

///

///

1    In attempting to establish the existence of this factual dispute, the opposing party

2    must tender evidence of specific facts in the form of affidavits, and/or admissible

3    discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P.

4    56(e).  The opposing party must demonstrate that the fact in contention is material, i.e., a

5    fact that might affect the outcome of the suit under the governing law, and that the

6    dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict

7    for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52

8    (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347,

9    355 (9th Cir. 1987).  Stated another way, "before the evidence is left to the jury, there is

10   a preliminary question for the judge, not whether there is literally no evidence, but

11   whether there is any upon which a jury could properly proceed to find a verdict for the

12   party producing it, upon whom the onus of proof is imposed."  Anderson, 477 U.S. at 251

13   (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)).  As the Supreme Court

14   explained, "[w]hen the moving party has carried its burden under Rule 56(c), its

15   opponent must do more than simply show that there is some metaphysical doubt as to

16   the material facts . . . . Where the record taken as a whole could not lead a rational trier

17   of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita,

18   475 U.S. at 586-87.

19   In resolving a summary judgment motion, the evidence of the opposing party is to

20   be believed, and all reasonable inferences that may be drawn from the facts placed

21   before the court must be drawn in favor of the opposing party.  Anderson, 477 U.S. at

22   255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

23   obligation to produce a factual predicate from which the inference may be drawn.

24   Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd,

25   810 F.2d 898 (9th Cir. 1987).

26   ///

27   ////

28   ////

7

1

**ANALYSIS**

2

3          A.      **Joint Employment under the FLSA**

4

5          Congress passed the Fair Labor Standards Act ("FLSA") intending to "correct and

6    eliminate those 'conditions detrimental to the maintenance of the minimum standard of

7    living necessary for health, efficiency, and general wellbeing of workers." Torres-Lopez

8    v. May, 111 F.3d 633, 638 (9th Cir. 1997) (citing 29 U.S.C. § 202(a)).  The FLSA

9    established a minimum wage; regulations concerning "maximum hours"; recordkeeping

10   and reporting requirements; child labor provisions; and a system of civil and criminal

11   penalties for violations.  See generally 29 U.S.C. §§ 201-219.  In 1966, Congress

12   amended the FLSA to extend minimum wage protections to some agricultural workers.

13   See S. Rep. No. 89-1487 (1966).

14          Pursuant to 29 U.S.C. § 216(b), employees may only seek redress from

15   "employers."  "The FLSA broadly defines the 'employer-employee relationship[s]' subject

16   to its reach."  Torres-Lopez, 111 F.3d at 638.  Under the FLSA, to "employ" is defined as

17   "includ[ing] to suffer or permit to work."  29 U.S.C. § 203(g).  "The FLSA's definition of

18   employee has been called the 'broadest definition that has ever been included in any

19   one act.'"  United States v. Rosenwasser, 323 U.S. 360, 363 n.3 (1945); see also

20   Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326 (1992) (noting the "striking

21   breadth" of the "suffer or permit" definition).  The Ninth Circuit, among others, has held

22   that "employees" include those workers "who as a matter of economic reality are

23   dependent upon the business to which they render service."  Real v. Driscoll Strawberry

24   Assocs., Inc., 603 F.2d 748, 754 (9th Cir. 1979); see also Charles v. Burton, 169 F.3d

25   1322, 1328 (11th Cir. 1999) (finding that a business entity employs an individual when

26   the economic reality is such that the individual depends on the entity); Sec'y of Labor v.

27   Lauritzen, 835 F.2d 1529, 1538 (7th Cir. 1987) (holding that the degree to which the

28   alleged employee depends on the particular business determines employee status).

1    Employees can have more than one employer under the FLSA, and "joint

2    employers" are each individually liable for FLSA violations.  Torres-Lopez, 111 F.3d at

3    638 (citing 29 C.F.R. § 791.2(a) ("A single individual may stand in the relation of an

4    employee to two or more employers at the same time . . . .")).  The question of joint

5    employment is a question of law.  Bonnette v. Cal. Health & Welfare Agency, 704 F.2d

6    1465 (9th Cir. 1983); Torres-Lopez, 111 F.3d at 638.  The Ninth Circuit "has recognized

7    that the concept of joint employment should be defined expansively under the FLSA" in

8    order to effectuate the FLSA's broad remedial purposes.  Torres-Lopez, 111 F.3d at 639

9    (citing Real, 603 F.2d at 754 ("Courts have adopted an expansive interpretation of the

10   definitions of 'employer' and 'employee' under the FLSA, in order to effectuate the broad

11   remedial purposes of the Act.")).

12   Courts also employ an "economic realities" test to determine whether a joint

13   employment relationship existed.  Real, 603 F.2d at 754; Bonnette, 704 F.2d at 1470;

14   Torres-Lopez, 111 F.3d at 639.  The economic reality test seeks to ascertain whether the

15   employee in question is economically dependent on the alleged employer.  See Torres-

16   Lopez, 111 F.3d at 641.  Where the worker is "economically dependent" upon an alleged

17   employer and the alleged employer "exercised control" over the workers, an employer-

18   employee relationship will be found.  Id. at 644.  However, under this test, no single

19   factor is determinative.  Donovan v. Sureway Cleaners, Inc., 656 F.2d 1368, 1370 (9th

20   Cir. 1981) ("Neither the presence nor absence of any individual factor is determinative.").

21   "Whether an employee-employer relationship exists depends on the circumstances of

22   the whole activity."  Real, 603 F.2d at 754.

23   Courts have used various regulatory and non-regulatory factors to determine

24   whether a joint employment relationship exists.  See Zhao v. Bebe Stores, Inc., 247 F.

25   Supp. 2d 1154, 1157 (C.D. Cal. 2003) ("The Ninth Circuit has, at various times, identified

26   different factors as relevant to the test of whether an employment relationship exists for

27   purposes of the FLSA.").  Five regulatory factors, taken from the Migrant and Seasonal

28   Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. §§ 1801-1872, are:

1    (1) the nature and degree of control of the workers; (2) the degree of supervision, direct

2    or indirect, of the work; (3) the power to determine pay rates or methods of payment of

3    the workers; (4) the right, directly or indirectly, to hire, fire, or modify employment

4    conditions of the workers, and (5) the preparation of payroll and the payment of wages.

5    29 C.F.R. § 500.20(h)(5)(iv).  The "regulatory factors relate to whether an alleged joint

6    employer exerts control over workers and their wages."  Torres-Lopez, 111 F.3d at 636.

7         The eight non-regulatory factors used by the Ninth Circuit are: (1) whether the

8    work was a "specialty job on the production line;" (2) whether responsibility under the

9    contracts between a labor contractor and an employer pass from one labor contractor to

10    another without "material changes;" (3) whether the "premises and equipment" of the

11    employer are used for the work; (4) whether the employees had a "business organization

12    that could or did shift as a unit from one [worksite] to another;" (5) whether the work was

13    "piecework" and not work that required "initiative, judgment or foresight;" (6) whether the

14    employee had an "opportunity for profit or loss depending upon [the alleged employee's]

15    managerial skill;" (7) whether there was "permanence [in] the working relationship;" and

16    (8) whether "the service rendered is an integral part of the alleged employer's business."

17    Torres-Lopez, 111 F.3d at 640 (internal citations omitted).  These eight factors are

18    derived from the AWPA.  Maddock v. KB Homes, Inc., 631 F. Supp. 1226, 1233 (C.D.

19    Cal. 2007).  The non-regulatory factors "relate to whether a farmworker is economically

20    dependent on the alleged joint employer."  Id.

21         The Ninth Circuit has indicated that under its version of the test, a court is to

22    consider those factors that are "relevant to the particular situation" when evaluating a

23    potential joint employer relationship.  Id. at 639 (quoting Bonnette, 704 F.2d at 1470).

24    Furthermore, a farm labor contractor and a grower may have a joint employment

25    relationship where:

26    ///

27    ///

28    ///

(1) they have an agreement to share the worker's services, such as to interchange employees; (2) where the farm labor contractor acts "directly or indirectly in the interest of the other employer;" or (3) the grower and farm labor contractor "may be deemed to share control of the employee, directly, or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

Rosales v. El Rancho Farms, 1:09-CV-00707-AWI, 2011 WL 6153276 (E.D. Cal. Dec. 12, 2011), report and recommendation adopted, 1:09-CV-00707-AWI, 2012 WL 292977 (E.D. Cal. Jan. 31, 2012) (quoting 29 C.F.R. § 791.2(b)).

First, the Islands Defendants assert that there is no evidence showing that Plaintiffs actually worked for Islands, and thus, the Islands Defendants are not "employers" of Plaintiffs, and Plaintiffs were never "employees" of the Islands Defendants.  (ECF No. 149 at 3.)  Defendants cite numerous exhibits to support this contention, including the Declaration of Thomas Hester, Defendant SGLC's Response to Islands' Special Interrogatory, and multiple depositions.  (Id.)  However, Plaintiffs argue that there is indeed a genuine issue of material fact about whether Plaintiffs worked for Islands, as established by the deposition testimony of Julian Gonzalez.  (ECF No. 159 at 20.)  In his deposition on November 18, 2009, Julian Gonzalez testified as follows:

Q: And for Islands Farms, in 2008 did you [SGLC] provide about sixty workers to Islands Farms for apples?
A: More or less.  I'm not certain.
Q: Sure.  Were most of those H-2A workers?
A: Some of them were.  Some they were local base.

(ECF No. 167-1 at 62.)  The Islands Defendants argue that this testimony was later corrected.  However, to establish that Julian Gonzalez's testimony on this particular point was later corrected or retracted, the Islands Defendants offer only SGLC's Answer to the Islands Defendants' Request for Admissions and SGLC's Response to Islands' Special Interrogatories.  (ECF No. 200 at 5; ECF No. 201 at 5-6.)  Specifically, the Islands Defendants' Request for Admission, Set One included "Request No. 5," which requested that SGLC, Inc. "Admit that the testimony of Julian Gonzales [sic] set forth in Exhibit A stating that H-2A workers worked for Island Farms is inaccurate."

11

1   (ECF No. 150-12 at 3.)  SGLC responded "Admit."  (Id.)  However, this admission by

2   SGLC does not, as the Islands Defendants contend, show that Julian Gonzalez

3   corrected his testimony or ever stated that his testimony regarding whether H-2A

4   laborers worked for Islands or on Islands' property was mistaken.  Rather, this admission

5   merely establishes that SGLC believes that Julian Gonzalez's testimony was inaccurate.

6   The Islands Defendants also rely on SGLC, Inc.'s Responses to Islands, Inc.'s Special

7   Interrogatories, Set One, in which "Interrogatory No. 4" asks "Do you contend that any H-

8   2A workers contracted by SGLC worked on or at property owned by Islands, Inc.?"

9   (ECF No. 150-3 at 3.)  SGLC's response was "No."  (Id.)  This response by SGLC also

10  fails to show that Julian Gonzalez corrected his own testimony that H-2A workers

11  performed work for Islands in 2008.  The Court therefore cannot discount the testimony

12  of Julian Gonzalez, and thus concludes that there is a genuine issue of material fact

13  whether Plaintiffs performed work for Islands.

14       Second, the Islands Defendants assert that even if Plaintiffs did perform work for

15  Islands, Plaintiffs have failed to put forth evidence showing that Islands was a joint

16  employer under the FLSA, and thus the Islands Defendants cannot be liable to Plaintiffs

17  under the FLSA.  As stated above, the test for joint employment must "evaluate the

18  totality of the circumstances, focusing on the economic realities of the particular

19  employment relationship."  The Islands Defendants argue that under the eight non-

20  regulatory factors, the Islands Defendants cannot be found to be a joint employer of

21  Plaintiffs.  Plaintiffs, on the other hand, argue that there are disputed material facts about

22  Islands' control of Plaintiffs and Plaintiffs' economic dependence on Islands that

23  preclude the Court from finding that, as a matter of law, the Islands Defendants did not

24  jointly employ Plaintiffs.

25       As stated above, joint employment is a question of law.  Torres-Lopez, 111 F.3d

26  at 638.  Plaintiffs have put forth numerous facts relating to the degree of control the

27  Islands Defendants exerted over its workers.  For example, Plaintiffs offer evidence from

28  the deposition of Thomas Hester.  (ECF No. 167-1.)

1   At his deposition, Thomas Hester testified as follows: He personally determined where

2   the workers would start working in the fields (Dep. Thomas Hester, ECF No. 167-1 at 33)

3   and what fruit was ready to be picked (id. at 35).  Hester and Salvador Gonzalez

4   negotiated the piece rate for the workers, with Hester basing the rate on the previous

5   year's rate, "throw[ing] out the first number," and then "go[ing] from there." (Id. at 24.)

6   Hester or one of his employees reviewed and approved all of the time sheets for the

7   SGLC laborers, and he discussed with the SGLC foreman whether to use a piece rate or

8   an hourly rate for each day.  (Id. at 25-27.)  If a worker left early, or failed to arrive on

9   time, and the SGLC foreman did not notice this fact, then Hester or an Islands employee

10  brought it to SGLC's attention and corrected the time sheets accordingly.  (Id. at 27.)

11  Hester monitored the quality of the SGLC laborers' work, and would bring it to the

12  attention of "one of Sal's guys . . . and [would] say 'we need to correct this issue.'" (Id. at

13  28.)  In those circumstances, Hester asked the foreman to correct the problem, and if the

14  foreman was unable to correct it, then Hester called Salvador Gonzalez.  (Id.)  Hester's

15  Spanish-speaking employees watched over the SGLC laborers as they worked in the

16  fields.  (Id. at 29.)  Either Hester, or another Islands employee, monitored the quality of

17  the fruit and brought problems to the attention of the SGLC foreman, and Hester

18  monitored how the fruit was packed into the boxes.  (Id. at 30.)  When there was a

19  determined limit to the number of bins to be picked, Hester was the person that

20  determined the limit.  (Id. at 33-34.)

21          Defendants argue that this evidence is irrelevant, as Defendants contend that it

22  "illustrates how Islands/Hester and SGLC managed persons who *did* perform work on

23  Islands' property, or at their bequest—none of whom were the H-2A workers or the

24  Plaintiffs in this case. . . . This excessive recital of Hester's deposition testimony

25  completely ignores the undisputed fact that none of the plaintiffs worked under the

26  direction of Islands, or on property owned or operated by Islands." (ECF No. 200 at 6

27  (emphasis in original).)

28  ///

But given that it is, in fact, disputed whether Plaintiffs worked at Islands, see supra, the evidence offered by Plaintiffs regarding Islands' control of its workers and their economic dependence on Islands creates disputed issues of material fact regarding the extent of Islands' control over the SGLC workers and the workers' economic dependence on Islands.

Torres-Lopez is key to the Court's consideration of the joint employment issue, as the disputed evidence presented by Plaintiffs, if true, makes the present case analogous to Torres-Lopez in many respects.  In Torres-Lopez, the Ninth Circuit addressed cross-motions for summary judgment.  111 F.3d at 636.  Plaintiffs were farm laborers, and Defendants were Bear Creek Farms, where Plaintiffs worked, and Robert May, a Bear Creek Farms official.  Id. at 637.  In that case, May entered into an oral contract with a farm labor contractor to have the farm labor contractor supply and supervise farmworkers, in exchange for fifty percent of the gross proceeds.  Id.  This contract was standard for the industry.  The evidence presented showed that May and Bear Creek Farms "controlled the overall harvest schedule and the number of workers needed for harvesting," that Bear Creek Farms "advised the farm labor contractor about when to begin the harvest," and that Bear Creek Farms "had the power to decide which days were suitable for harvesting."  Id. at 642.   Similarly, in this case, Thomas Hester told crews supplied by SGLC when to start work (ECF No. 167-1 at 33), where to start work and where to go after that, based on his testing of the maturity of the fruit and what he saw in the orchards (ECF No. 167-1 at 35).  Hester also decided the number of bins the workers would pick and sometimes limited how much fruit would be picked.  (ECF No. 167-1 at 33-34.)

///

///

///

///

///

1   The Court found that "Bear Creek Farms also exercised a substantial degree of

2   supervision over the work performed by the farmworkers," as "May had the right to

3   inspect all the work performed by the farmworkers." 111 F.3d at 642.  Importantly, the

4   Court noted that "indirect control as well as direct control can demonstrate a joint

5   employment relationship." Id. at 643 (citing 29 C.F.R. § 500.20(h)(4)(ii) (listing one of the

6   regulatory factors as "[t]he degree of supervision, direct or indirect, of the work")).

7   Likewise, in the present case, Plaintiffs have presented evidence that Thomas Hester or

8   another Islands employee monitored the quality of the workers supplied by SGLC (ECF

9   No. 167-1 at 27-28); that Thomas Hester or another employee would bring problems with

10  quality, such as workers picking fruit that was too small, to the attention of the SGLC

11  foreman or Salvador Gonzalez (ECF No. 167-1 at 28); that Islands employees who

12  speak Spanish supervised work in the field, monitored the quality of the fruit picked, and

13  addressed quality problems with the SGLC foreman (ECF No. 167-1 at 28-29); and that

14  Thomas Hester sometimes walked behind workers supplied by SGLC and would tell

15  them if they were leaving fruit in the trees (ECF No. 167-1 at 33).  In assessing the

16  regulatory factors relating to control of payment and the payroll, the Court found that

17  although "Bear Creek Farms was not involved in preparing the farmworkers' payroll or

18  directly paying their wages," the fact that "Bear Creek Farms exercised some power in

19  determining the pay rates for the farmworkers during the early part of the harvest"

20  weighed in favor of finding a joint employment relationship.  111 F.3d at 643.  Similarly,

21  in this case, Hester or another Islands foreman reviewed and approved the timesheets

22  for the workers supplied by SGLC and signed them each day.  (ECF No. 167-1 at 25-

23  27.)  Hester would bring inaccuracies in the time sheets to Salvador Gonzalez's

24  attention.  (ECF No. 167-1 at 27.)  Moreover, Hester or another Islands employee would

25  negotiate whether to pay the workers an hourly rate or a piece rate.  (ECF No. 167-1 at

26  23-25.)  Thus, Islands also "exercised some power" in determining Plaintiffs' pay.

27  ///

28  ///

15

1    The Ninth Circuit then addressed the non-regulatory factors, and found that all but

2    one weighed in favor of finding a joint employment relationship.  First, because "the

3    farmworkers' only function was to pick cucumbers according to standard industry

4    practice," and "what they did constituted one small step in the sequence of steps taken

5    by Bear Creek Farms to grow the cucumbers and prepare them for processing at the

6    cannery," the Court found that the task of picking cucumbers was "analogous to a

7    'specialty job on the production line.'"  111 F.3d at 643.  The same is certainly true in this

8    case, where the workers supplied by SGLC harvested apples which were then boxed

9    and sent to the packing shed.  (ECF No. 167-1 at 30-31.)   Second, the Court noted that

10   there were no "material changes in the terms of the oral contracts between Bear Creek

11   Farms and the farm labor contractors," because "[t]he contracts were standard for the

12   industry."  111 F.3d at 643.  Although the contract at issue in this case was written rather

13   than oral, there is evidence that the agreement between the Islands Defendants and

14   SGLC was based on what other large labor contractors in the area were paying (ECF

15   No. 167-1 at 23) and what Islands had paid in the past (ECF No. 167-1 at 6, 23.)  Third,

16   the Court noted that "Bear Creek Farms had an ownership interest in the 'premises and

17   equipment' used for the work.'"  Likewise, Islands is an independently owned business

18   located on approximately 12,000 acres of land in Ryer Island, California. (ECF No. 151

19   at 2.)  Islands owns approximately 6,000 acres of land on Ryer Island, and farms

20   approximately 3,500 acres of that land.  (Id.)  Thus, the third factor weighs in Plaintiffs'

21   favor.  Fourth, in Torres-Lopez, the Court found that "the farmworkers did not have a

22   'business organization that could or did shift as a unit from one [farm] to another," as,

23   instead, "individual farmworkers would learn by word of mouth that the cucumbers were

24   ready for picking and find their own way to the cucumber field."  111 F.3d at 644.  This

25   factual difference distinguishes the present case from Torres-Lopez, as Plaintiffs were

26   recruited to work as a group and were bussed by SGLC to different farms depending on

27   the needs of the growers.  Thus, this factor does not weigh in Plaintiffs' favor.

28   ///

1   Fifth, the Ninth Circuit held that "the job of picking cucumbers is 'piecework' that requires

2   no great 'initiative, judgment, or foresight,' or 'special skill.'" 111 F.3d at 644.  Plaintiffs'

3   job of picking apples is analogous to picking cucumbers, and thus weighs in Plaintiffs'

4   favor.  Sixth, in this case, as in Torres-Lopez, "the farmworkers had no 'opportunity for

5   profit or loss depending upon [their] managerial skill.  They worked at a piece-rate and

6   the amount of money they earned depended solely upon the number of cucumbers they

7   themselves picked." Id. at 644.  Plaintiffs in this case earned either a piece rate or an

8   hourly rate (ECF No. 167-1 at 23-25) and thus had no "opportunity for profit or loss

9   depending upon [their] managerial skill." 111 F.3d at 644.  This sixth factor thus weighs

10   in Plaintiffs' favor.  Seventh, the Ninth Circuit found that "there was no 'permanence in

11   the working relationship,' because the farmworkers only harvested for Bear Creek Farms

12   for thirty-two days . . . ." Id.  The Court found that this factor did not support finding a

13   joint employment relationship.  In the present case, it is unclear how many days Plaintiffs

14   worked for the Islands Defendants, if at all.  Thus, the seventh factor does not clearly

15   weigh in Plaintiffs' favor, but also does not clearly weigh against Plaintiffs, as the facts

16   are simply unknown at this point.  Finally, the Court found that "it is beyond dispute that

17   the collective effort of the workers in harvesting the cucumber crop was an integral part

18   of Bear Creek Farms' business." Id. at 644.  In the present case, as in Torres-Lopez, the

19   Islands Defendant "would not have been able to realize any of the economic benefits

20   from [their] substantial investment in growing [apples]" if those crops were not picked by

21   the laborers supplied by SGLC.

22       In light of the Ninth Circuit's holding in Torres-Lopez, if the trier of fact should find

23   Plaintiffs' evidence to be true, there would be sufficient evidence to find that the Islands

24   Defendants jointly employed Plaintiffs.  Given the genuine issues of material fact relating

25   to actual work performed, the extent of Islands' control, and the extent of Plaintiffs'

26   economic dependence on Islands in the event that they did indeed work for Islands, the

27   Court cannot reach the legal issue of whether Islands jointly employed Plaintiffs.

28   ///

1    Accordingly, the Islands Defendants' Motion for Summary Judgment is denied as to

2    Plaintiffs' FLSA claim.

3         The parties also argue extensively over whether there is evidence showing that

4    the SGLC Defendants and the Islands Defendants acted in concert, such that Islands is

5    liable under the FLSA based on agreeing that SGLC should apply for an H-2A permit

6    and supporting SGLC in that application by signing a written contract for work.  Under

7    this theory, Plaintiffs contend that even if it is established that Plaintiffs never worked on

8    Islands' property, Islands is nonetheless liable as a joint employer.  The Islands

9    Defendants counter that there is no evidence showing that they acted in concert with

10   SGLC and cannot be held liable under this theory.  Because the facts of whether

11   Plaintiffs actually worked for Islands, and to what extent Islands controlled Plaintiffs and

12   to what extent Plaintiffs economically depended on Islands in the event that they did

13   work for Islands, remain disputed and preclude summary judgment, it is unnecessary for

14   the Court to settle this additional dispute between the parties.

15        **B.    Thomas Hester's Individual Liability**

16

17        Hester contends that he cannot be held personally liable for violating the FLSA

18   because "[t]he law does not impose liability on an individual corporate agent acting

19   within the scope of their agency."  (ECF No. 148 at 16.)

20        However, under the FLSA, "[w]here an individual exercises 'control over the

21   nature and structure of the employment relationship,' or 'economic control' over the

22   relationship, that individual is an employer within the meaning of the [FLSA], and is

23   subject to liability."  Boucher v. Shaw, 572 F.3d 1087, 1091 (9th Cir. 2009).  As a result,

24   courts have found that a corporation's officers can be liable for FLSA violations where

25   the officers "exercised economic and operational control over the employment

26   relationship."  Lambert v. Ackerley, 1080 F.3d 997, 1012 (9th Cir. 1999).  In the present

27   case, Plaintiffs offer evidence sufficient to create an issue of material fact whether Hester

28   exercised control over the laborers' daily work.  See supra.

1    While the extent of Hester's control over the laborers' employment is disputed, Plaintiffs

2    present facts sufficient to preclude summary judgment.  See De Guzman v. Parc Temple

3    LLC, 537 F. Supp. 2d 1087, 1094 (C.D. Cal. 2008) (denying summary judgment to

4    individual defendant after "consider[ing] the totality of the circumstances of the

5    [employment] relationship").  Accordingly, Hester is not entitled to summary judgment for

6    Plaintiffs' first cause of action.

7         Hester also claims that he is entitled to summary judgment on Plaintiffs' breach of

8    contract claim against him because he "acted within his capacity as Manager and Vice

9    President of Islands, Inc. at all times relevant to this lawsuit."  (ECF No. 148 at 16.)

10   Under California law it is "well established that corporate agents and employees acting

11   for and on behalf of a corporation cannot be held liable for inducing a breach of the

12   corporation's contract."  Shoemaker v. Myers, 52 Cal. 3d 1, 24 (1990).  This is especially

13   true where the defendant is "a known agent of a disclosed principal."  Sackett v. Wyatt,

14   32 Cal. App. 3d 592, 597 (1973).  Plaintiffs offer no arguments or evidence that Hester

15   was acting other than in his professional capacity as an officer or agent for Islands.

16   Moreover, Plaintiffs' evidence provides no indication that Hester withheld any information

17   regarding his relationship to Islands.  Furthermore, piercing the corporate veil is

18   inappropriate in this case because Plaintiffs fail to offer any facts suggesting "such a

19   unity of interest and ownership between the corporation and its equitable owner that no

20   separation actually exists," or that there would be "an inequitable result if the acts in

21   question are treated as those of the corporation alone."  Leek v. Cooper, 1994 Cal. App.

22   4th 399, 417 (2011).  Thus, Hester's Motion for Summary Judgment is granted for

23   Plaintiffs' second cause of action.

24        Hester also asserts that he cannot be held personally liable for Plaintiffs' state

25   law claims involving failure to pay wages due, failure to provide meal and rest periods,

26   and failure to pay wages due upon termination.  (ECF No. 148 at 17.)  "Directors and

27   officers of a corporation do not incur personal liability for the torts of the corporation

28   merely by reason of their official position."

1  United States Liab. Ins. Co. v. Haidinger-Hayes, Inc., 1 Cal. 3d 586, 595 (1970).  Indeed,

2  the Industrial Welfare Commission's "definition of employer does not impose liability on

3  individual corporate agents acting within the scope of their agency."  Martinez v. Combs,

4  49 Cal. 4th 35, 75 (2010).  Here, Plaintiffs simply allege that Hester is personally

5  responsible for the wages allegedly owed and the allegedly insufficient meal periods

6  without producing any evidence or arguments suggesting that Hester exceeded his

7  professional capacity.  Therefore, Hester's motion for summary judgment is granted for

8  Plaintiffs' third, fourth, and fifth causes of action.

9          To the extent that Hester argues that he is not liable for violations California

10  Business and Professions Code section 17200 because he was "an individual corporate

11  agent acting within the scope of [his] agency," (ECF No. 148 at 16), the Court rejects that

12  contention.  Hester's position is at odds with recognized California law holding that "a

13  corporate officer who participates in conduct that violates the UCL can be held

14  personally liable."  Dufour v. BE LLC, No. C 09-03770 CRB, 2010 WL 2560409, at *10

15  (N.D. Cal. June 22, 2010).  Specifically, "if the evidence establishes defendant's

16  participation in the unlawful practices, either directly or by aiding and abetting the

17  principal, liability under sections 17200 and 17500 can be imposed."  People v. Toomey,

18  157 Cal. App. 3d 1, 15 (1984).  The evidence Plaintiffs put forward in support of their

19  FLSA claim, see supra, sufficiently creates a genuine issue of material fact regarding

20  Hester's "personal 'participation in the unlawful practices.'"  Emery v. Visa Int'l Serv.

21  Ass'n, 95 Cal App. 4th 952, 960 (2002).  Although Hester may dispute his involvement in

22  any alleged unlawful conduct, Plaintiffs nonetheless present sufficient evidence to

23  survive summary judgment.  See supra.   Accordingly, Hester is not entitled to summary

24  judgment for Plaintiffs' seventh cause of action.

25  ///

26  ///

27  ///

28  ///

1

2

### C.   Joint Employment under California Law

3   Islands also argues that Plaintiffs cannot meet their burden of proving that a joint

4   employment relationship existed under California law.  (ECF No. 148 at 13.)  Each of

5   Plaintiffs' claims under the California Labor Code requires an employment relationship to

6   exist in order for the claim to succeed, as only an "employer" is liable for the violations

7   which Plaintiffs allege.  See Cal. Lab. Code §§ 1194, 1197.1, 226.7, 203.  The California

8   Supreme Court has stated that the federal definition of "employment" is inapplicable

9   under California law.  Martinez v. Combs, 49 Cal. 4th 35, 52 (2010).  Rather, California

10  courts rely on the definitions provided in California's Industrial Welfare Commission's

11  ("IWC")[6] wage orders in determining whether an employment relationship exists.

12  Martinez, 49 Cal. 4th at 52.  The IWC has the authority to promulgate regulations known

13  as "wage orders" governing wages, hours, and working conditions in California.

14  Tidewater Marine W., Inc. v. Bradshaw, 14 Cal. 4th 557, 561 (1996).  Under the IWC,

15  and thus under California law, "to employ . . . has three alternative definitions. It means:

16  (a) to exercise control over the wages, hours, or working conditions, or (b) to suffer or

17  permit to work, or (c) to engage, thereby creating a common law employment

18  relationship."  Martinez, 49 Cal. 4th at 64 (emphasis in original).  Control is central to

19  whether there is an employment relationship under California law.  Id. at 76.  California

20  law also anticipates the possibility of joint employers, and requires that an entity meet

21  one of the three tests to be liable as such.  Id. at 64.

22  In Martinez, seasonal strawberry pickers worked for Munoz & Sons ("Munoz").

23  They sued merchants that purchased strawberries from Munoz, alleging they were

24  entitled to unpaid minimum wages.

25  ///

26

27  [6] The IWC "is an administrative body within the Division of Labor Standards Enforcement, consisting of five members appointed by the Governor.  The commission determines the wages, hours, and working

28  conditions of all employees, except outside salesman, in fifteen industries."  Cal. Hotel & Motel Ass'n v. Indus. Welfare Comm'n., 25 Cal. 3d 200, 205 (1979).

1    "The merchants moved for summary judgment claiming that they could not be held liable

2    for the alleged wage and hour violations because they were not 'employers' of the

3    plaintiffs.  The California Supreme Court held that the produce merchants did not

4    exercise control over the workers' wages and hours and were not liable as 'employers'

5    under the IWC's wage order."  Gonzalez v. Millard Mall Servs., Inc., No. 09cv2076-

6    AJB(WVG), 2012 WL 727867, at *4 (S.D. Cal. Mar. 6, 2012) (citing Martinez, 49 Cal. 4th

7    at 42, 48, 71-74).  The California Supreme Court found that the facts failed to establish

8    that the produce merchants had a business relationship with Munoz that "allowed [the

9    produce merchants] to exercise control over Munoz's employees' wages and hours."  Id.

10   at *5 (citing Martinez, 49 Cal. 4th at 72).

11          Relying on generally the same arguments put forth for the FLSA claim, see supra,

12   Islands contends that there is no evidence that Plaintiffs ever worked on Islands'

13   property or that Islands had the ability to control the wages, hours, or working conditions

14   in any way, and that there is no evidence that Islands acted in concert with other

15   Defendants by recruiting or deciding to recruit Plaintiffs.  Islands finally argues there is

16   no evidence that Islands offered any of the Plaintiffs the opportunity to work at Islands.

17   Thus, according to Islands, it had no employment relationship with Plaintiffs.

18   Accordingly, Islands argues that it is entitled to summary judgment on Plaintiffs' second,

19   third, fourth, fifth, and seventh causes of action.

20          Plaintiffs argue that disputed material facts demonstrate a triable issue as to

21   California's "suffer or permit to work" standard.  "The verbs 'to suffer' and 'to permit' . . .

22   are terms of art in employment law."  Martinez, 49 Cal. 4th at 64.  "The basis of liability is

23   the defendant's knowledge of and failure to prevent the [illegal] work from occurring."  Id.

24   at 70.  Plaintiffs provide evidence showing that Thomas Hester and other Islands

25   employees were consistently in the fields; thus, it is reasonable to conclude that Islands

26   had knowledge of the unlawful employment conditions if they existed.

27   ///

28   ///

1   Plaintiffs further provide evidence that Islands had the power to stop work on its property

2   and thus it is reasonably to conclude that Islands could have prevented unlawful

3   employment conditions.  In Martinez, the California Supreme Court held that the land

4   owner did not have the power to prevent plaintiffs from working because the contractor

5   "had the exclusive power to hire and fire his workers, to set their wages and hours, and

6   to tell them when and where to report to work." 49 Cal. 4th at 70.  In this case, it is

7   disputed whether Islands had the power to prevent Plaintiffs from working because,

8   taking the evidence submitted by Plaintiffs as true, Islands helped set the workers'

9   wages (see Dep. Thomas Hester, ECF No. 167-1 at 24, 25-27), decided when and

10  where to start harvesting (ECF No. 167-1 at 33, 35), and decided what time the work day

11  would start (ECF No. 167-1 at 33, 34).  Moreover, Plaintiffs argue that Thomas Hester's

12  statement that he told SGLC that he did not want the H-2A workers at his property

13  demonstrates Islands' ability to prevent work from occurring on its property.  (ECF No.

14  167-1 at 36-37.)  Based on this evidence, a reasonable trier of fact could conclude that

15  Islands had knowledge of, and failed to prevent, the allegedly illegal work from occurring,

16  and thus is an employer under California's "suffer or permit" standard.

17       Plaintiffs also argue that Islands exercised control over their wages, hours, or

18  working conditions.  "[C]ontrol over wages' means that a person or entity has the power

19  or authority to negotiate and set an employee's rate of pay, and not that a person or

20  entity is physically involved in the preparation of an employee's paycheck." Futrell v.

21  Payday Cal., Inc., 190 Cal. App. 4th 1419, 1432 (2010).  As set forth above, Plaintiffs

22  have offered evidence creating a genuine issue of material fact whether, and to what

23  degree, Islands controlled the field workers' wage rates (ECF No. 167-1 at 24, 25-27)

24  and hours (ECF No. 167-1 at 33-34).

25       Thus, Plaintiffs have demonstrated that there are genuine issues of material fact

26  whether Islands was Plaintiffs' joint employer under state law.

27  ///

28  ///

1    Accordingly, Islands Motion for Summary Judgment is denied as to Plaintiffs' third,

2    fourth, and fifth causes of action.  Islands' sole argument as to each of these claims is

3    that the claims require an employee-employer relationship.  Because Plaintiffs have put

4    forward evidence sufficient to create genuine issues of material fact that preclude the

5    Court from finding that Islands was not Plaintiffs' joint employer, these claims survive the

6    instant motion.

7         **D.    Breach of Contract**

8

9         Plaintiffs allege that Islands breached its work contracts with Plaintiffs by violating

10   numerous state and federal laws.  (ECF No. 67 at 9-10.)  Plaintiffs allege that as a result

11   of Islands' breach, Plaintiffs were forced to terminate their employment before the end of

12   the contract period.  (Id. at 10.)  As a result, Plaintiffs claim, they suffered consequential

13   damages including lost pay and the lost payment of unreimbursed expenses.  (Id.)

14        "To be entitled to damages for breach of contract, a plaintiff must plead and

15   prove the following elements: (1) the existence of a contract, (2) plaintiff's performance

16   or excuse for nonperformance, (3) defendant's breach, and (4) resulting damage to the

17   plaintiff." Reinhardt v. Gemini Motor Transp., 1:11-CV-1944 AWI SMS, 2012 WL

18   1435008 (E.D. Cal. Apr. 25, 2012) (quoting Oasis West Realty, LLC v. Goldman, 51 Cal.

19   4th 811, 821 (2011)).  Islands contends that Plaintiffs failed to demonstrate the existence

20   of a contract between Islands and Plaintiffs.  (ECF No. 148 at 15.)  Islands argues that

21   because Plaintiffs have put forth no facts establishing that such an agreement existed,

22   Islands is entitled to summary judgment.  (Id.)

23        Plaintiffs contend that Islands is bound by the employment contract between

24   SGLC and Plaintiffs pursuant to an agency or representative liability theory.  "A

25   representative is '[o]ne who stands for or acts on behalf of another." Borders Online,

26   LLC v. State Bd. of Equalization, 129 Cal. App. 4th 1179, 1189 (2005) (quoting Black's

27   Law Dictionary 1304 (7th ed. 1999)).  "An agent is one who represents another, called

28   the principal, in dealings with third persons." Id. (quoting Cal. Civ. Code § 2295).

1   "The relation of agency need not depend upon express appointment and acceptance

2   thereof, but it may be, and frequently is, implied from the words and conduct of the

3   parties and the circumstances of the particular case."  Smith v. Schuttpelz, 1 Cal. 2d

4   158, 161 (1934); see also Borders Online, LLC, 129 Cal. App. 4th at 1189 ("An agency

5   relationship may be implied based on conduct and circumstances."); Thayer v. Pac.

6   Elec. Ry. Co., 55 Cal. 2d 430, 438 (1940) ("The existence of an agency is a question of

7   fact which may be implied from the conduct of the parties.") (internal citations omitted).

8   When an agent acts on behalf of an undisclosed principal, the unidentified principal

9   becomes a party to the contract.  Restatement (Third) of Agency: Agent for Undisclosed

10  Principal §§ 6.02, 6.03 (2006).  The agent who makes a contract on behalf of an

11  undisclosed principal is also a party to the contract.  Id.  The principal and the third party

12  have the same rights, liabilities, and defenses against each other as if the principal made

13  the contract personally . . . ."  Id. § 6.03.  The existence of an agency relationship is a

14  question of fact.  Thayer, 55 Cal. 2d at 438.

15          In the present case, Plaintiffs have put forward facts that, if found to be true by the

16  trier of fact, would permit a reasonable trier of fact to find an implied agency relationship

17  between SGLC and Islands.  For example, Plaintiffs offer evidence that Islands endorsed

18  SGLC's H-2A application by entering into a written contract with SGLC, for the first time,

19  in 2008, (ECF No. 167-1 at 8-9), and that Islands assumed that SGLC needed this

20  contract to apply for the H-2A program (ECF No. 167-1 at 3-4).  Plaintiffs also offer

21  evidence that Islands met with the SGLC Defendants and other grower Defendants to

22  discuss the details of recruiting H-2A workers (ECF No. 167-1 at 11; ECF No. 167-1 at

23  55) and authorized Salvador Gonzalez to recruit workers for their labor contracts (ECF

24  No. 176-1 at 68).  The growers and Salvador Gonzalez came to an agreement and then

25  told the governor of Mexico that they would like his help with recruiting workers to fill the

26  labor needs at their farms.  (ECF No. 176-1 at 140-141.)  The SGLC Defendants

27  discussed the progress of the H-2A applications with Thomas Hester multiple times.

28  ///

1   (ECF No. 167-1 at 11, 15, 16, 17, 19)  The evidence also shows that Islands knew that

2   SGLC and the other grower Defendants traveled to Mexico to recruit H-2A workers to

3   provide labor to the growers during the 2008 growing season.  (ECF No. 167-1 at 23.)

4   SGLC also relied on its labor contract with Islands in submitting its H-2A permit

5   application to the DOL (ECF No. 171-1 at 86-90), and Islands knew that SGLC would do

6   so.  (ECF No. 167-1 at 8.)  Additionally, Plaintiffs present facts sufficient to create a

7   genuine issue of material fact whether SGLC recruited workers in Mexico and made

8   promises to those workers in reliance on its contract with Islands and the amount of

9   labor Islands said it would need for the 2008 growing season.  (See, e.g., ECF No. 176

10  at 12, 19, 25.)  Although Islands contends that it is undisputed that "Islands did not

11  communicate with any persons in Mexico regarding opportunities to work in its

12  agricultural operation during the 2008 season,"[7] Plaintiffs' agency theory creates a

13  genuine issue of material fact regarding this statement.  That is, in the event that the trier

14  of fact determines that an agency relationship did exist between Islands and SGLC, the

15  trier of fact may also find that Islands communicated with persons in Mexico via its

16  agent, SGLC.

17        Viewing this evidence in the light most favorable to Plaintiffs, a trier of fact could

18  find that an agency relationship existed between Islands and SGLC, and that Islands

19  was bound to the employment contracts entered into between SGLC and Plaintiffs.  As

20  such, Islands has not shown as a matter of law that it is entitled to summary judgment on

21  Plaintiffs' breach of contract claim.

22  ///

23  ///

24  _____

25  [7] The Islands Defendants contend that Plaintiffs have failed to dispute Defendants' Statement of
    Undisputed Facts No. 6 and No. 7 because Plaintiffs fail to include the word "Disputed" in the "Undisputed
26  or Disputed" column of Plaintiffs' Response to Defendants' Statement of Undisputed Facts in Support of
    Opposition to Defendant Islands, Inc. and Thomas Hester's Motion for Summary Judgment.  (ECF No. 200
27  at 3.)  Thus, the Islands Defendants contend that Plaintiffs have conceded these facts.  (Id.)  However,
    Plaintiffs clearly dispute these facts, as they cite to evidence creating genuine issues regarding Islands'
28  "undisputed" facts. (ECF No. 159-1 at 32-37.)  Thus, the Court rejects Islands' argument and finds that
    Plaintiffs have not conceded that these facts are undisputed.

1

2

### E.      Unfair Competition

Islands further moves for summary adjudication of the seventh cause of action for violation of California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200 et seq. "In order to state a claim for a violation of the [UCL], a plaintiff must allege that the defendant committed a business act that is either fraudulent, unlawful, or unfair." Levine v. Blue Shield of Cal., 189 Cal. App. 4th 1117, 1136 (2010). The UCL "protect[s] both consumers and competitors by promoting fair competition in commercial markets for goods and services." Kasky v. Nike, Inc., 27 Cal.4th 939, 949 (2002). The UCL "establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent.  In other words, a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa." Cel–Tech Comms., Inc. v. L.A. Cellular Tel. Co., 20 Cal.4th 163, 180 (1999). Plaintiffs assert their seventh cause of action under the UCL's unlawful prong.  An unlawful business practice is one that "is forbidden by any law," Olszewski v. Scripps Health, 30 Cal.4th 798, 827 (2003), and "[v]irtually any law— federal, state or local—can serve as a predicate for a section 17200 action," State Farm Fire & Cas. Co. v. Sup. Ct., 45 Cal. App. 4th 1093, 1102–03 (1996), abrogated on other grounds by Cel–Tech Comms., Inc., 20 Cal.4th at 180.

Plaintiffs' claim for unfair competition pursuant to California Business and Professions Code § 17200 is grounded in Plaintiffs' allegations that Islands violated the California Labor Code and the FLSA.  Islands contends that because Plaintiffs have failed to show that Islands is liable under any of the Labor Code statutes, Islands is entitled to summary judgment on Plaintiffs' UCL claim.  Because Islands has failed to meet its initial burden on summary judgment for Plaintiffs' FLSA claim and California Labor Code claims, Islands is not entitled to summary judgment for this cause of action.

///

///

///

27

1

2

### F.    Fraud and Misrepresentation

3    Plaintiffs' eighth cause of action is for fraud and misrepresentation.  Plaintiffs'

4 ninth cause of action alleges solicitation of employees by misrepresentation in violation

5 of section 970 of the California Labor Code.  Plaintiffs again rely on an agency theory in

6 advancing these claims: they argue that Islands, through its agent SGLC, represented to

7 Plaintiffs that they would earn $100.00 per day.  Plaintiffs contend that the SGLC

8 Defendants, and thus Islands, knew that this amount was false because the H-2A

9 contract stated that the guaranteed rate of pay was $9.72 per hour for eight hours per

10 day, an amount which falls well under $100.00 per day.  (ECF No. 159 at 25.)  Islands

11 argues that "the bases for Plaintiffs theories that Islands [and] Hester are liable for

12 violations of Labor Code 970 are the same unproved allegations that Islands was a joint

13 employer and that an agency relationship was created."  (ECF No. 200 at 6.)  Islands

14 also states that "the same analysis discussed in the eighth cause of action [for fraudulent

15 misrepresentation] can be applied."  (Id.)

16    The elements of an action for fraud are: (1) misrepresentation; (2) knowledge of

17 falsity; (3) intent to defraud, i.e. to induce reliance; (4) justifiable reliance; and (5)

18 resulting damage.  Lazar v. Sup. Ct., 12 Cal. 4th 631, 638 (1996) (internal citations

19 omitted).  Agency law imposes liability upon an innocent principal for the torts of his

20 agent, including fraud, committed within the scope of the agency relationship.  See

21 Garton v. Title Ins. & Trst Co., 165 Cal. App. 3d 365, 375 (1980).

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

Likewise, section 970 of the California Labor Code provides:

> No person, or agent or officer thereof, directly or indirectly, shall influence, persuade, or engage any person to change from one place to another in this State or from any place outside to any place within the State, or from any place within the State to any place outside, for the purpose of working in any branch of labor, through or by means of knowingly false representations, whether spoken, written, or advertised in printed form, concerning either:
> (a) The kind, character, or existence of work;
> (b) The length of time such work will last, or the compensation therefor; . . . .

Plaintiffs have put forth evidence creating genuine issues of material fact about whether SGLC and Islands had an agency relationship. See supra. Because a principal may be liable for the fraud of its agent, and an agent may be liable under section 970, Islands is not entitled to summary judgment on Plaintiffs' eighth and ninth causes of action. In short, because a reasonable trier of fact could find that an agency relationship existed between the Defendants, see supra, the Court cannot conclude that, as a matter of law, Islands is not liable for fraudulent misrepresentation or violations of section 970 of the California Labor Code.

### G.   Employee Housing Violations

Plaintiffs' sixth cause of action alleges violations of sections 17000 et seq. of the California Health and Safety Code ("the Employee Housing Act"). Plaintiffs' Second Amended Complaint alleges that "at all times relevant to this action, the SGLC Defendants, Defendant Julian Gonzalez and Defendant Vino Farms, Inc. knowingly and willfully maintained Labor Camp 17 heretofore described in a manner that failed to comply with applicable health, safety, and building codes in violation of Health and Safety Code § 17001 et seq. and its implementing regulations." (ECF No. 67 at 13.) Plaintiffs allege that Labor Camp 17 was owned by Defendant Vino Farms, and operated or managed by the SGLC Defendants. (Id. at 8.) Islands argues that these pleadings fail under Rule 8(a) as they apply to Islands because they fail to provide "a short and plain statement of the claim showing that [Plaintiffs are] entitled to relief."

1    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting Fed. R. Civ. P. 8(a)).  Because

2    Plaintiffs do not allege that Islands was involved in any of the allegations raised in this

3    cause of action, and the cause of action, as pled, alleges wrongdoing only by the SGLC

4    Defendants and the Vino Farms Defendants, Islands contends that the Court must

5    dismiss this cause of action against Islands.

6         Rule 8(a) requires "a showing, rather than a blanket assertion, of entitlement to

7    relief.  Without some factual allegation in the complaint, a claimant cannot satisfy the

8    requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which

9    the claim rests." *Twombly*, 550 U.S. 544, 555 n.3 (2007).  Rule 8(a), at minimum,

10    "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

11    *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Plaintiffs fail to meet the

12    pleading standards of Rule 8(a), as they make no factual allegations regarding the

13    Islands Defendants to support this claim; Plaintiffs do not even make an "unadorned,

14    the-defendant-unlawfully-harmed-me accusation" regarding Islands in their sixth cause

15    of action.  Indeed, Plaintiffs make no accusations regarding Islands at all in support of

16    this cause of action.  As such, Plaintiffs fail to state a cause of action for violations of the

17    Employee Housing Act against the Islands Defendants, and this cause of action is

18    therefore dismissed as to Islands and Thomas Hester.

19    ///

20    ///

21    ///

22    ///

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

**CONCLUSION**

For the reasons set forth above, it is hereby ordered that:

1. Defendants Islands, Inc. and Thomas Hester's Motion for Summary Judgment is DENIED as to Plaintiffs' first cause of action. (ECF No. 148).

2. Defendant Thomas Hester's Motion for Summary Judgment is GRANTED as to him only for Plaintiffs' second, third, fourth, and fifth causes of action.

3. Defendant Islands, Inc.'s Motion for Summary Judgment is DENIED as to Plaintiffs' second, third, fourth, fifth, seventh, eighth, and ninth causes of action.

4. Plaintiffs' sixth cause of action is DISMISSED as to Defendants Islands, Inc. and Thomas Hester.

5. Defendant Thomas Hester's Motion for Summary Judgment is DENIED as to Plaintiffs' seventh cause of action.

IT IS SO ORDERED.

Dated: November 15, 2012

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE